**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re DANVILLE EMERGENCY PHYSICIANS, P.C.,  )  )  )  Debtor,  )  ) | Case No. 06-61306-LYN  Chapter 7  Involuntary Petition |

**MEMORANDUM AND ORDER**

The matter comes before the court on the motion of Danville Emergency Physicians, P.C., ("the Alleged Debtor") to dismiss the involuntary petition in this chapter 7 case that was filed by Danville Regional Health System ("the Petitioning Creditor"). The motion to dismiss is based on the assertion that the Alleged Debtor had twelve or more creditors on the date that the Petitioning Creditor filed the petition.

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as directed by Fed.R.Civ.P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

*Facts*

Until May 31, 2006, the Alleged Debtor provided emergency room services to Danville Regional Medical Center ("the Hospital"). Its contract with the Hospital terminated on May 31, 2006. On August 30, 2006, the Petitioning Creditor filed an involuntary chapter 7 petition against the Alleged Debtor asserting that the Petitioning Creditor was eligible to file the petition

1

under 11 U.S.C. § 303(b) and that the Alleged Debtor was generally not paying its debts as they became due, unless those debts were the subject of a bona fide dispute as to liability or amount.

On September 15, 2006, the Alleged Debtor filed an answer (1) asserting that the Petitioning Creditor is not a qualified Petitioner, (2) asserting that the Alleged Debtor has 12 or more creditors, (3) denying that the Alleged Debtor is generally not paying its debts as they become due, unless the debts are the subject of a bona fide dispute as to liability or amount; and (4) asserting that the Petitioning Creditor's statement that its claim is unsecured and liquidated is not correct.

On February 5, 2007, the Alleged Debtor filed a motion to dismiss the case. The parties agreed that a hearing would be held only on the issue of whether the Alleged Debtor had 12 or more creditors on the date that the Petitioning Creditor filed the involuntary petition. A hearing was held, a briefing schedule was set and the matter was taken under submission.

*Discussion*

A hearing contesting the validity of an involuntary petition raises two primary issues: (1) whether one or three creditors must join in the filing the involuntary petition, an issue that is determined by whether the alleged debtor has twelve or more creditors holding certain kinds of claims[1]; and (2) whether the alleged debtor is generally paying its debts as they come due[2]. The only issue before the Court at this time is whether the Alleged Debtor had 12 or more qualifying creditors on the date of petition.

A single petitioning creditor may file an involuntary petition against an alleged debtor if

---

[1]    See 11 U.S.C. § 303(b).

[2]    See 11 U.S.C. § 303(h).

2

the debtor has fewer than twelve creditors "excluding any employee or insider of such [alleged debtor] and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of" the Bankruptcy Code, holding claims aggregating at least $12,300.00.  11 U.S.C. § 303(b)(2).  If there are twelve or more such creditors (referred to herein as "qualifying creditors"), then the involuntary petition must be filed by three or more creditors.  11 U.S.C. § 303(b)(1).

The Bankruptcy Court is to conduct a detailed analysis to determine if there are fewer than twelve such creditors.  See Atlas Machine & Iron Works, Inc., v. Bethlehem Steel Corp., 986 F.2d 709 (4th Cir. 1993).   The determination is to be made as of the date of petition.  See, e.g., In re Atwood, 124 B.R. 402 (S.D. Ga. 1991).

A sole petitioning creditor has the burden of showing that an alleged debtor has fewer than twelve creditors as defined in Section 303(b).  Atlas Mach., 986 F.2d at 715-716.  A petitioning creditor must satisfy its burden of proof that an involuntary petition is properly filed by a preponderance of evidence.  In Eastown Auto Co., 215 B.R. 960, 968 (6th Cir. B.A.P. 1998) (Citation omitted.)

The Alleged Debtor has filed a creditor matrix listing 26 creditors.[3]   The Petitioning Creditor does not object to the following creditors as qualifying creditors for purposes of Section 303(b)(2): (1)  MD Associates, Inc., (2)  Piedmont Credit &  Collections Services, and (3)

---

[3]    The listed creditors are (1) MD Associates, Inc.; (2) Anthem Health, (3)  Gateway Health Alliance, (4) First Insurance Funding Corp., (5) ePowerDoc, Inc., (6) Piedmont Credit &  Collections Services, (7) Dick Singleton, CPA, (8) City of Danville, (9) Woods Rogers PLC Attorneys At Law, (10) EMPAC Managers, (11) Goodman & Company, (12) Richard A. Smith, MD, (13) Ramon Gomez, MD, (14) Walter J. Kaniefski, MD, (15) Reuben M. De Las Alas, MD, (16) Shannon Early, (17) Mark Moran, (18) Diane Poteat, (19) John J. Dallara, MD, (20) Richard A. Smith, MD, (21) Walter J. Kaniefski, MD, (22) Reuben M. De Las Alas, MD, (23) Ramon Gomez, MD, (24) Danville Regional Health System, (25) Danville Regional Medical Center, LLC, and (26) Lifepoint Hospitals Holdings, Inc.

Woods Rogers, LLC, Attorneys at Law.

For purposes of this dispute, the following kinds of creditors with the following claims may not be counted for the purpose of determining whether the Alleged Debtor had twelve or more creditors on the date of petition: (1) creditors whose claims are the subject of a bona fide dispute; (2) creditors whose claims are contingent as to liability; (3) creditors whose claims may be avoided in whole or in part under 11 U.S.C. § 549; (4) creditors who are insiders of the Alleged Debtor; and (3) creditors who are employees of the Alleged Debtor.

The Petitioning Creditor has objected to the inclusion of the certain creditors on the grounds (a) that they are the recipients of post-petition transfers, (b) that they are insiders of the Alleged Debtor, (c) that they are employees of the Alleged Debtor, and (d) that they have no claim against the Alleged Debtor.

*A. Disqualification of Creditors as Post-petition Transferees.*

Any creditor who is the transferee of a transfer that is voidable under Section 549 is not a qualifying creditor. 11 U.S.C. § 303(b)(2). Section 549 provides in relevant part

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
>     (1) that occurs after the commencement of the case; and
>     (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
>         (B) that is not authorized under this title or by the court.
> (b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

The exception in (b) applies whether the creditor gives value before, after, or at the same time as the transfer of property of the estate. Both the transfer of property of the estate and the giving of

4

value to the estate must occur during the period between the date of petition and the date of the order for relief, but they may occur in any order. See Yancey v. Varner (In re Pucci Shoes, Inc.), 120 F.3d 38, 42 (4th Cir. 1997). ("[T]he value exchanged for property of the bankruptcy estate need not be provided prior to or simultaneously with the transfer so long as the value is given during the gap period . . .")

The parties raise a number of legal arguments concerning this rule of law. First, the Alleged Debtor argues that post-petition transfers made in the ordinary course of business are not voidable under Section 549. The Alleged Debtor, citing two opinions[4] rendered in chapter 11 cases, argues that the transfers in the ordinary course of business are not avoidable under Section 549. In each of those opinions, the Court held that post-petition transfers could not be avoided if they were in the ordinary course of business. The conclusion is necessarily based in part on the fact that Section 1108 allows a chapter 11 debtor-in-possession to operate the debtor's business. The instant case is a case under chapter 7 and Section 1l08 does not apply, so the Alleged Debtor's argument must fail.

There also exists an argument that Section 363 gives an alleged chapter 7 debtor the authority to transfer property in the ordinary course of business, based on the authority of the debtor to operate its business under 11 U.S.C. § 303(f). Section 363(c)(1), however, requires court authorization under Chapter 7, see Section 721, to effect transactions that are in the ordinary course of business. No such authority exists in this case. There is no ordinary course of

---

[4] See Habinger, Inc. v. Cosmetic and Reconstruction Surgical Clinic, P.A., 124 B.R. 784 (D.MInn. 1990) and In re H & W Motor Express, 2005 WL 149009 (Bankr. N.D.Iowa 2005).

business exception to post-petition transfers under the facts in this case.[5]

Second, the Alleged Debtor argues that a transfer may not be avoided under Section 549 if the creditor gives *any* value during the gap period. Section 549 provides that a trustee may not avoid a transfer "to the extent any value . . . is given". The exception applies only *to the extent of* the value given. If the value of the post-period transfer is greater than the value given, then the transfer may be avoided in part. If the transfer may be avoided in part, the creditor cannot be included as a qualifying creditor for purposes of Section 303(b)(2). For purposes of this analysis, a creditor is not disqualified as a qualifying creditor under Section 549 if the value that it gives to the debtor during the gap period is equal to, or greater that, the value of the property of the estate that is transferred. If the value it gives during the gap period is less that the value of the transfer, then the creditor may not be counted for purposes of Section 303(b)(2).

From the foregoing, it may be said that, under Section 549, a trustee may avoid a transfer of property of the estate that (1) that is made post-petition; (2) that is not authorized by the court or by a provision in the bankruptcy code other than Section 303(f) or Section 542(c); and (3) that is not in exchange for equal or greater value given post-petition.

---

[5] See Shaia v. Conoco, Inc., (In re Williams Contract Furniture), 148 B.R. 805, 808, n.5 (Bankr. E.D.Va. 1992).

Although the issue was not raised by the parties, the Court recognizes that an argument could be made which asserts 11 U.S.C. § 363 as authority for the debtor to execute transfers in the ordinary course of business, in addition to the authority of the debtor to operate its business under 11 U.S.C. § 303(f).  See *In re Fort Dodge Creamery Co.,* 121 B.R. 831, 830 (Bankr.N.D.Iowa 1990).  There the court decided that the debtors' acts in an involuntary Chapter 7 were not in the ordinary course of business and therefore not authorized under § 363.  The court further decided that the acts could only be authorized under § 303(f), and were consequently avoidable under § 549(a)(1) and (2)(A).  If § 363 is to be used as authority for showing that the act was authorized under Title 11, it should be noted that § 363(b)(1) requires notice and a hearing if the transaction is not in the ordinary course of business and § 363(c)(1) would require court authorization under Chapter 7 pursuant to § 721 for transactions which were in the ordinary course of business.  No such authority exists in this case.  Consequently the only authority for the debtor's action in this case is § 303(f), irrespective of whether or not this debtor was in the process of liquidating its assets.

For purposes of Section 303(b), then, a creditor is not a qualifying creditor if (1) it receives a transfer of property of the estate post-petition (2) which transfer is not duly authorized by the bankruptcy code or the Court; and (3) the creditor does not give value to the alleged debtor during the gap period that is greater than the value of the transfer.  There is no ordinary course of business exception to post-petition transfers made during the gap period following the filing of an involuntary chapter 7 petition.

*Burden of Proof under Section 549*.   As noted, a petitioning creditor must generally carry the burden of proof on involuntary petition, and must do so by a preponderance of evidence.  The Petitioning Creditor has two burdens.   The Petitioning Creditor's first burden is the burden of coming forward with sufficient evidence to demonstrate that the creditor in question received a post-petition transfer of property of the estate.  This is sometimes termed the burden of making a prima facie case.  Once the Petitioning Creditor has met the burden of coming forward, the burden shifts to the alleged debtor to demonstrate that the transfer was valid, that is, that the transfer was authorized by the Court or by the bankruptcy Code, or that the creditor in question gave value during the gap period greater that the value of the property transferred by the Debtor.  See Fed. R. Bankr. P. 6001 (Any entity asserting the validity of a transfer under § 549 of the Code shall gave the burden of proof.)  If the alleged debtor cannot present evidence greater in weight than that of the Petitioning Creditor, the creditor in question may not be counted as a qualifying creditor for purposes of Section 303(b)(2).

*Anthem Health [2] ("Anthem")*.  The Alleged Debtor owed Anthem $2,250.00 as of the date of petition in insurance premiums for coverage ending June 1, 2006.  The Alleged Debtor paid Anthem  $2,479.25 by check that was honored on September 20, 2006.  The transfer

constituted a post-petition transfer that a trustee could avoid under Section 549. Anthem was a creditor on the date of petition but may not be counted because it was the transferee of post-petition transfer.

The Alleged Debtor argues that the post-petition transfer is not voidable under Section 549 because it was made in the ordinary course of business. As noted above, there is no ordinary course of business defense against a post-petition transfer during the gap period in an involuntary chapter 7 petition. Anthem Health is not a qualifying creditor for purposes of Section 303(b)(2).

*Gateway Health Alliance [3] ("Gateway").* Gateway, a network of health providers, contracts with physicians, and groups of physicians, who provide services to patients who are employees of businesses that have a contracted with Gateway for health services. The Alleged Debtor constituted a group of physicians who had contracted to provide services to the employees of Gateway's employers. The Alleged Debtor paid Gateway annual dues. As of the date of petition, the Debtor owed Gateway $700.00 in dues for the year ending April 30, 2006. The Alleged Debtor paid this amount in full post-petition by two checks, the second of which was in the amount of $200.00 and was honored on September 20, 2006.

After the Alleged Debtor ceased providing medical services to patients, an event that occurred pre-petition, Gateway continued to process claims and make payments to the Alleged Debtor, but the Alleged Debtor ceased providing services to employees of Gateway's employers.

The Alleged Debtor argues that the post-petition transfer is not voidable under Section 549 because it "was providing services to the Debtor [in] regard to insurance claims that were still being processed after the involuntary petition was filed." In order to successfully assert the

validity of the $700.00 in post-petition transfers under Section 549, the Alleged Debtor must demonstrate by a preponderance of the evidence that it has received $700.00 in services from Gateway during the gap period. It has presented no such evidence.

The transfer constituted a post-petition transfer that a trustee could avoid under Section 549. Gateway Health Alliance was a creditor on the date of petition but may not be counted because it was the transferee of voidable post-petition transfer.

*First Insurance Funding Corp. [4] ("First Insurance").* In 2005, the Alleged Debtor joined a "risk retention group" managed by EMPAC managers, permitting the Alleged Debtor to self-insure against medical malpractice claims. An addition to the malpractice premium payments, EMPAC charged a "join-up fee" of $150,000.00. The Alleged Debtor borrowed $150,000.00 from First Insurance which it then paid to EMPAC. The debt was evidenced by a promissory note and secured by a collateral interest in any return premiums, dividend payments, and certain loss payments on the Alleged Debtor's malpractice insurance through EMPAC.

The Alleged Debtor made a payment to First Insurance in the amount of $2,913.00 by check honored on October 6, 2006. The payment constituted a post-petition transfer of an interest of property of the estate. The Alleged Debtor argues that the post-petition transfer is not voidable under Section 549 because it was made in the ordinary course of business. As noted above, there is no ordinary course of business defense against a post-petition transfer during the gap period in an involuntary chapter 7 petition. First Insurance Funding Corp. is not a qualifying creditor for purposes of Section 303(b)(2).

*ePowerDoc, Inc.* The Alleged Debtor and ePowerDoc, Inc., entered into an agreement under which ePowerDoc, Inc., would provide the Alleged Debtor with its emergency room

documentation system. On the date of petition, the Alleged Debtor owed ePowerDoc, Inc., $6,600.00 for providing such services. When the Debtor ceased providing services to the Hospital, it entered into an agreement to continue providing services until Team Health decided what documentation system it would use.

The Alleged Debtor made a number of post-petition payment to ePowerDoc, Inc., at least one of which was honored on September 20, 2007. The Alleged Debtor asserts that ePowerDoc, Inc., has provided it with value post-petition, but has provided no evidence demonstrating the amount of that value. The burden of proof is on the Alleged Debtor to do so. ePowerDoc, Inc., is not a qualifying creditor for purposes of Section 303(b)(2).

*Richard Singleton, CPA. ("Singleton").* Singleton provided accounting and tax services to the Alleged Debtor pre-petition and was listed as a creditor by the Alleged Debtor. He received two payments for the Alleged Debtor in the amounts of $400.00 and $145.00. The Petitioning Creditor argues that Singleton is not a qualifying creditor because he received avoidable post-petition transfers of property of the estate.

The Alleged Debtor argues that the post-petition transfers are not voidable under Section 549 because they were made in the ordinary course of business. As noted above, there is no ordinary course of business defense against a post-petition transfer during the gap period in an involuntary chapter 7 petition. Dick Singleton, CPA, is not a qualifying creditor for purposes of Section 303(b)(2).

*Goodman & Company.* Goodman & Company administers the Alleged Debtor's 401(k) retirement plan. The Petitioning Creditor argues that Goodman & Company is not a qualifying creditor because it received an avoidable post-petition transfer.

The Alleged Debtor paid Goodman & Company $2,000.00 post-petition. The Alleged Debtor asserts that Goodman & Company has provided it with value post-petition, but has provided no evidence demonstrating the amount of that value. The burden of proof is on the Alleged Debtor to do so. Goodman & Company is not a qualifying creditor for purposes of Section 303(b)(2).

*Shannon Early and Mark Moran*. These former employees of the Alleged Debtor were paid for unpaid time off earned prior to May 31, 2006. The checks were honored post-petition, on September 20, 2006, and September 29, 2006. Neither former employee has rendered any services to the Alleged Debtor post-petition. They are not qualifying creditors for purposes of Section 303(b)(2).

*B. Disqualification of Creditors as Former Employees who are Insiders.*

Insiders of a debtor do not qualify as creditors for purposes of Section 303(b). Insiders include directors of a debtor if the debtor is a corporation. 11 U.S.C. §101(31)(B)(I).

*Richard A. Smith, MD, Ramon Gomez, MD, Walter J. Kaniefski, MD, Reuben M. DeLasAlas, MD, (collectively, "the Doctors as Former Employees").* The Alleged Debtor scheduled these four doctors as creditors based on the fact that each has a claim against the Alleged Debtor based on unpaid paid time off. Each of these doctors was a director of the Alleged Debtor on the date of petition. As such they are not qualified as creditors for purposes of Section 303(b)(2).

*C. Disqualified Creditors as Former Employees.*

Employees of an alleged debtor are not creditors of a debtor for purposes of Section 303(b)(2) .

*Diane Poteat, Shannon Early, and Mark Moran*.  The Debtor scheduled Diane Poteat as a creditor on the grounds that she is owed a salary bonus.  The Alleged Debtor also listed Shannon Early and Mark Moran as creditors on the grounds that they have claims based on unpaid paid time off.  As noted above, Shannon Early and Mark Moran are disqualified under Section 303(b)(2) as the transferees of post-petition transfers.

The Petitioning Creditor asserts that Shannon Early is not a qualifying employees for purposes of Section 303(b)(2) because she is a former employee of the Alleged Debtor.  The Court disagrees.  The primary reason that employees are excluded as qualifying employees for purposes of Section 303(b)(2) is that they are unlikely to join an involuntary petition against the debtor.  See In re DemirCo Group North America, LLC, 343 B.R. 898 (Bankr. C.D.Ill. 2006).  They are unlikely to do so because they have financial interests that parallel those of the debtor more than those of the debtor's creditors.  This policy reason is not applicable to former employees.  None of the three former employees are disqualified on this grounds.

*D. Disqualification of Creditors as Directors (Insiders).*

Insiders of the debtor are not qualified creditors for purposes of Section 303(b).  Insiders include directors of the debtor if the debtor is a corporation.  11 U.S.C. §101(31)(B)(I).

*Richard A. Smith, MD, Ramon Gomez, MD, Walter J. Kaniefski, MD, Reuben M. DeLasAlas, MD, and John Dallara, M.D, (collectively, "the Doctors")*.  The Petitioning Creditor argues that none of the Doctors may be counted because they are insiders of the Alleged Debtor.  Each of the Doctors was a director on the date of petition.   They are insiders and are not qualifying creditors for purposes of Section 303(b).

The Alleged Debtor argues that the only reason that the Doctors are creditors is because

they were required to loan money to the Alleged Debtor so that it could afford to pay the premiums on the tail coverage.   Once a creditor is determined to be insider by statute, there is no reason for the Court to consider the events that gave rise to debtor-creditor relationship.

The Alleged Debtor also argues that if the Doctors had not lent money to the Alleged Debtor, then a number of former employees would now be creditors.   There is no provision in the bankruptcy code regarding claims that would support a conclusion that hypothetical creditors should be counted for purposes of Section 303(b)(2).    The Doctors are not qualifying creditors for purposes of Section 303(b)(2).

*E. Conclusions.*

The following creditors are disallowed for purposes of Section 303(b)(2): (1) Anthem Health, (2) Gateway Health Alliance, (3) First Insurance Funding Corp., (4) ePowerDoc, Inc., (5) Richard Singleton, CPA, (6) Goodman & Company, (7) Richard A. Smith, MD, (8) Ramon Gomez, MD, (9) Walter J. Kaniefski, MD, (10) Reuben M. De Las Alas, MD, (11) Shannon Early, (12) Mark Moran, (13) John J. Dallara, MD, (14) Richard A. Smith, MD, (15) Walter J. Kaniefski, MD, (16) Reuben M. De Las Alas, MD, and (17) Ramon Gomez, MD

The following creditors are allowed for purposes of Section 303(b)(2):  (1)  MD Associates, Inc., (2)  Piedmont Credit &  Collections Services, and (3) Woods Rogers, LLC, Attorneys at Law,   (4) Diane Poteat, and  (5) Danville Regional Health System (the Petitioning Creditor).

The Alleged Debtor also listed Danville Regional Medical Center, LLC ("DRMC") and Lifepoint Hospitals Holdings, Inc., ("Lifepoint") as creditors.   The Petitioning Creditor argues that neither DRMC nor Lifepoint have a claim against the Alleged Debtor, notwithstanding the

13

fact that they contributed to the purchase of the promissory note that the Petitioning Creditor purchased from American National Bank.   The Petitioning Creditor also argues that EMPAC is not a qualifying creditor because it is the recipient of a post-petition transfer.  The Petitioning Creditor also argues that the City of Danville is not a qualifying creditor in that it received an avoidable post-petition transfer.

The Court need not consider arguments on the issues concerning these four creditors. Even if DRMC, Lifepoint, EMPAC and the City of Danville are deemed to be creditors for purposes of Section 303(b)(2), the Alleged Debtor would only have nine (9) qualifying creditors. Accordingly, the motion to dismiss the involuntary petition on the grounds that there are not three petitioning creditors is denied.

## **ORDER**

For the reasons stated above, the motion to dismiss the involuntary petition on the grounds that there are not three petitioning creditors is denied.

Upon entry of this Memorandum and Order, the Clerk shall forward a copy to Richard C. Maxwell, Esq., and Darren W. Bentley, Esq.

Entered on this 13th day of April, 2007.

_____
William E. Anderson
United States Bankruptcy Judge